UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MOHAMMAD SAMIR SIDDIQUE
and TAYLOR Q. SCOTT,

        Plaintiffs,

  v.

TONY EVERS, MARK MONE,
MICHAEL LALIBERTE, DAVID M. SOCKTON,
RYAN SORENSON, EDWARD C. MELCHIOR,
CAMILLE RIDGEWAY, NICOLE HEINEN, and ROBIN JENS,

        Defendants.

Case No. 20-cv-824-pp

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO STRIKE DEFENSES (DKT. NO. 19), GRANTING PLAINTIFFS' MOTION FOR EXTENSION OF TIME TO COMPLETE SERVICE ON DEFENDANTS LAILBERTE AND RIDGEWAY (DKT. NO. 25) AND GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE CORRECTED REPLY BRIEF IN SUPPORT OF STRIKING DEFENSES (DKT. NO. 37)**

The plaintiffs, former student leaders at the University of Wisconsin-Milwaukee (UWM), allege that the chancellor "unlawfully ousted the elected student government" and the plaintiffs organized an alternative student government. Dkt. No. 1 at 1. Mohammad Samir Siddique alleges that he "was forced to endure a farcical show trial and forced to make a compelled statement of political incorrectness on threat of severe sanctions." Id. at 2. Taylor Scott says the defendants "constructively expelled" him when he "suspended his education rather than face UWM's kangaroo justice." Id. Both assert civil rights violations arising from alleged retaliation for engaging in protected speech.

1

This is not the first time the plaintiffs have filed a legal challenge to the defendants' actions. In addition to cases filed in Milwaukee County Circuit Court, Siddique, Scott and others filed a case against many of the same defendants in this district. Judge J. P. Stadtmueller dismissed the complaint on multiple grounds, including failure to effectuate service, state-law immunity and improper joiner. UWM Student Assoc., *et al.* v. Lovell, 266 F. Supp. 1121 (E.D. Wis. 2017). The Seventh Circuit affirmed in part, reversing to the extent that the claims dismissed for misjoinder should have been dismissed without prejudice. UWM Student Assoc., *et al.* v. Lovell, 888 F.3d 854 (7th Cir. 2018). On remand, Judge Stadtmueller allowed the plaintiffs to file an amended complaint with one set of properly joined claims. Siddique v. Laliberte, No. 15-CV-1-JPS, 2018 WL 4705841, *1 (E.D. Wis. Oct. 1, 2018).

Siddique chose to proceed on two claims against Michael Laliberte, David Stockton and Richard Thomas. Id. He alleged that the defendants violated the First Amendment by retaliating against him and deprived him of a property or liberty interest without due process. Id. Judge Stadtmueller allowed the plaintiff to proceed on the First Amendment claim, but dismissed the case on summary judgment because he found that the defendants' actions were protected by qualified immunity. Case No. 15-cv-1, Dkt. No. 95. The Seventh Circuit affirmed the decision as to dismissal of the First Amendment claim, finding that federal law did not clearly establish that enforcing an enrollment requirement for a student government position violated the First Amendment.

Siddique v. Laliberte, 972 F.3d 898, 905 (7th Cir. 2020). The plaintiffs filed this case while that case was on appeal.

I.  **Background**

Siddique attended UWM as an undergraduate student from September 2011 to August 2016. Dkt. No. 1 at ¶2. Scott attended UWM from 2011 to 2013. Id. at ¶7.

The plaintiffs named each of the defendants because of their ties to the UWM administration and sued them in their individual capacities. Id. at ¶9. Defendant Governor Tony Evers serves as a member of the UW System Board of Regents. Id. at ¶11. Defendant Mark Mone served as UWM's Interim Chancellor, a position that eventually became permanent. Id. at ¶13. Defendant Michael Laliberte served as UWM's Vice Chancellor for Student Affairs. Id. at ¶14. Defendant David Stockton served as UWM's Coordinator for Student Government Relations. Id. at ¶15. Defendant Ryan Sorenson served as president of the Student Association from June 1, 2014 to May 31, 2015. Id. at ¶16. Defendants Ed Melchior, Nicole Heinen, Robin Jens and Camille Ridgeway served on the UWM nonacademic misconduct hearing committee. Id. at ¶17.

The plaintiffs were student senators in the Student Association (SA) from November 2011 to May 2013. Id. at ¶28. Both plaintiffs felt the SA should "more aggressively assert their statutory rights" under Wis. Stat. §36.09 and play a bigger role in policymaking and implementation in areas affecting students. Id. at ¶29. They allege they were subjected to elevated scrutiny because they engaged in protected speech. Id. at ¶32.

Laliberte and Stockton, who allegedly did not approve of the plaintiffs' political stance, allegedly used a complaint from a losing student political party as a pretext for investigating the outcome of the 2013 SA elections. Id. at 33. Laliberte and Stockton kept the elected members from holding office and Laliberte met with members of the "lame duck" SA administration to urge them to exclude Siddique and Scott. Id. at ¶35. Siddique applied to serve in the interim government. Id. at ¶36. Stockton—allegedly with Laliberte's approval and for the purpose of retaliating—vetoed Siddique's application. Id. Scott, on the other hand, did not apply, believing that to do so would have been futile. Id. Stockton addressed the new SA on or about June 30, 2013, allegedly accusing the prior SA members of "sexual harassment, racism, election fraud and attempted murder by poisoning" and corruption. Id. at ¶37.

The plaintiffs say that the administration pressured the interim SA to "rewrite its constitution from scratch with diminished student roles." Id. at ¶38. They say that the constitution passed with barely one percent of student support. Id. The plaintiffs refused to accept the interim SA as legitimate and proposed a new plan to continue under the SA name. Id. at ¶39. The plaintiffs got more than 1,300 UWM student signatures in support of their own plan, held a referendum and held their own election. Id. at ¶¶39, 40. Siddique was elected president and Scott vice president. Id. at ¶40. At that point there existed two student associations: (1) the official "Student Association at UWM" and (2) the plaintiffs "UWM Student Association." Id. at ¶41. The student associations exchanged cease and desist demands. Id. at 44-45.

4

The plaintiffs filed Case No. 14-cv-4396 in Milwaukee County Circuit Court, seeking to enjoin the university from pursuing discipline. Id. at ¶47. The court denied relief on June 6, 2014. Id.

On June 4, 2014, Siddique transmitted the UWM Student Association's budget to the Board of Regents. Id. at ¶48. Sorenson filed a complaint against the plaintiffs and Harbach issued a notice that she was investigating the complaint. Id. at ¶¶50, 51. On June 11, 2014, the UWM Dean of Students Office put a hold on Scott's records preventing him from registering for summer or fall classes in response to "possible nonacademic misconduct." Id. at ¶52. The plaintiffs say that the threat of sanctions silenced their activities. Id. at ¶54. After August 2014, they did not hold further meetings or an election. Id.

The plaintiffs allege two causes of action: (1) violation of Siddique's civil rights for retaliation against protected speech and association; and (2) violation of Scott's civil rights for protected speech and association. Id. at ¶¶55-90. Siddique's claim focuses on the disciplinary actions taken against him. Harbach sent a letter for Case No. 2013343702 finding that Siddique violated UWS 17 by making a false statement regarding a university matter, disrupting university-authorized activities and violating a published university rule. Id. at ¶56. Harbach's proposed sanction included community service and barring Siddique from continuing as a student or obtaining his records unless he ceased his relationship with the UWM Student Association and made a public statement "repudiating his belief that the UWM Student Association—not the

5

Student Association at UWM—had the legal right to represent students." Id. at ¶57.

Siddique appealed. Id. at ¶61. Harbach set August 5, 2014 as the date for a hearing before the committee. Id. Meanwhile, Siddique asked Chancellor Mone to overturn the decision and Mone refused by email dated July 31, 2014. Id. at ¶62. Defendants Melchior, Heinen, Jens, Ridgeway and Knautz (Knautz was the non-voting advisor) served on the nonacademic misconduct hearing committee. Id. at ¶63. The hearing committee heard from three witnesses: Siddique, Stockton and Sorenson. Id. at ¶64. According to Siddique, the hearing failed to provide sufficient notice of the claims against him and legal issues were off limits. Id. at ¶65. The committee refused to consider the First Amendment arguments and unanimously upheld Harbach's recommendations. Id. at ¶¶66, 69. Melchior authored the decision and Knautz sent it to the plaintiff on August 20, 2014. Id. at ¶69. Siddique was given a deadline of August 29, 2014 to send in his "compelled statement of contrition." Id.

Siddique wrote to the Board of Regents asking to appeal; the board construed his email as a notice of appeal. Id. at ¶70. On August 29, 2014, Siddique and others returned to court to enjoin UWM from imposing sanctions. Id. at ¶72. The court granted the injunction and issued its order on September 9, 2014. Id. The University defendants voluntarily agreed to stay sanctions and the court's September 9, 2014 order expired. Id. at ¶74. Meanwhile the Board of Regents declined review. Id. at ¶76. Siddique appealed to the circuit court. Milwaukee County Circuit Court Case No. 14-cv-10381. Id. at ¶77. That case

was dismissed after the decision of the misconduct committee was withdrawn and replaced with a finding of no violation. Id. Siddique claims that he was forced to make a statement in violation of his deeply held religious beliefs, forced to resign from his position, suffered emotional distress and "may have lost one or more potential law school admissions or scholarships, negatively affecting his prestige and his lifelong expected earnings. Id. at ¶81.

Meanwhile, Scott claims he that would have continued and completed his undergraduate degree but for the threats of disciplinary action. Id. at ¶84. He says that he "carefully considered the course of discipline against Siddique" and believed he would be subjected to the same treatment. Id. at ¶85. He claims he was constructively forced to abandon his higher education from 2014 to the present. Id. at ¶86.

The plaintiffs seek money damages, exemplary damages and fees. Id. at pp. 20-21.

## II.  Plaintiffs' Motion to Strike Defenses (Dkt. No. 19)

After defendants Heinen, Melchior and Sorenson answered the complaint, the plaintiffs moved to strike their defenses under Federal Rule of Civil Procedure 12(f) on the grounds that: (1) the defenses are not affirmative defenses; (2) the pleading did not warrant such defenses; (3) the defenses were frivolous; and (4) the defendants did not have standing to raise defenses on behalf of anyone else. Dkt. No. 19 at 2-3. The defendants responded by asserting that resolving the motion could cause delay. Dkt. No. 30 at 5. The defendants point out that the plaintiffs served the defendants on different days

7

(and that at that time one defendant had not been served at all) and said that the defendants intended to file a comprehensive motion to dismiss the entire complaint with its next round of answers. Id. The plaintiffs replied that the court should "strike even potentially viable defenses without leave to replead." Dkt. No. 34 at 2.

A. Standard Governing Motions to Strike

Rule 12(f) permits a court to strike from any pleading "an insufficient defense or any redundant, material, impertinent, or scandalous matter." Although motions to strike an affirmative defense generally are disfavored, motions that seek to "remove unnecessary clutter from the case" may expedite, rather than delay, proceedings. Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989). District courts have discretion in ruling on motions to strike. See, *e.g.*, Zuppardi v. Wal-Mart Stores, Inc., 770 F.3d 644, 647 (7th Cir. 2014) ("A district court's grant or denial of a motion to strike is reviewed for an abuse of discretion.").

Federal Rule of Civil Procedure 8(c) provides a non-exhaustive list of affirmative defenses and requires parties to "affirmatively state" all affirmative defenses in a responsive pleading. The Seventh Circuit has stated that "a defense not listed in Rule 8(c) is an affirmative defense that must be pleaded if the defendant bears the burden of proof on the issue under state law or if the defense does not controvert the plaintiff's proof." Reed v. Columbia St. Mary's Hosp., 915 F.3d 473, 478 (7th Cir. 2019). Because affirmative defenses are pleadings, they must comply with the general pleading requirement of Fed. R.

8

Civ. P. 8(a), which requires "a short and plain statement" of the defense that gives the other party fair notice of the nature of the defense. Rule 8 further requires that "[e]ach allegation must be simple, concise, and direct" but "[n]o technical form is required." Fed. R. Civ. P. 8(d)(1). Case law in this district makes clear that "bare bones conclusory allegations" do not suffice. See, *e.g.*, Heller, 883 F.3d at 1295 ("The remaining defenses are equally meritless. They are nothing but bare bones conclusory allegations.").

B. Defenses Raised as Affirmative Defenses

1. *Defense No. 1: Failure to State a Claim*

The parties agree that failure to state a claim is not an affirmative defense; the defendants argue, however, that striking the defense serves no purpose because it will be (and now has been) raised in a dispositive motion. Dkt. No. 30 at 6. Failure to state a claim is a recognized defense under Fed. R. Civ. P. 12(b) and the rule requires that "[e]very defense . . . must be asserted in the responsive pleading." Although failure to state a claim technically is not an *affirmative* defense, there is no reason for the court to strike a defense that the defendant also has raised by motion (Dkt. No. 36 at 7) and that the court will address in a separate order.

2. *Defense No. 2: Claim/Issue Preclusion*

The plaintiffs acknowledge that *res judicata* is an affirmative defense but argue that the defendants never explain which of the claims is subject to the defense or how it would apply in this case. Claim/issue preclusion is a proper affirmative defense and the defendants have raised the defense in their pending

9

motion to dismiss. Dkt. No. 36 at 4. The defense should come as no surprise to the plaintiffs—this appears to be the fourth case filed by at least one of the plaintiffs against UWM officials regarding the SA disputes in 2013-14. See Siddique, Scott *et al.* v. Board of Regents, Milwaukee County Circuit Court Case No. 14-cv-386; UWM Student Assn. v. UWM, Case No. 15-cv-1 (E.D. Wis.) (removed from Milwaukee County Cir. Case No. 14-cv-4396), *aff'd* Siddique v. Laliberte, *et al.*, 972 F.3d 898, 905 (7th Cir. 2020); Siddique v. Board of Regents, Milwaukee County Circuit Court Case No. 14-cv-10381.

In their reply brief, the plaintiffs wade into the merits of each of the previous cases. That analysis is not appropriate on a motion to strike; the only issue the court must resolve in the context of a motion to strike is whether claim/issue preclusion is a defense. It is. The court will deny the plaintiffs' motion as to this defense.

3. *Defense No. 3: Statute of Limitations*

The plaintiffs also acknowledge that the statute of limitations is an affirmative defense but argue that the complaint provides sufficient facts about the accrual of the action. The defendants respond that any violation that occurred before June 2, 2014 is time barred. Dkt. No. 30 at 9. Fed. R. Civ. P. 8(c) contemplates raising the statute of limitations as an affirmative defense. The court will deny the plaintiffs' motion as to this defense.

4. *Defense No. 4: Lack of Personal Involvement*

The plaintiffs argue that lack of personal involvement is not an affirmative defense. The defendants respond that the plaintiffs failed to allege

10

personal involvement by all defendants. Dkt. No. 30 at 10. Technically the plaintiffs are correct this is not an affirmative defense but the defendants have raised this argument in their motion to dismiss (which is fully briefed). If the purpose of a motion to strike is to remove clutter, that will not be accomplished by striking this defense. The court will address this defense by separate order.

5. *Defense No. 5: Doctrine of Quasi-Judicial Immunity*

The plaintiffs argue that the defendants never clarify which defendants must be dismissed under the doctrine of quasi-judicial immunity. According to the defendants, Melchoir, Jens, Ridgeway and Heinen were hearing examiners who presided over the adjudication of Siddique's non-academic misconduct charges. Dkt. No. 30 at 11. This defense has been raised in the defendants' motion to dismiss. Dkt. No. 36 at 17. Striking this defense does not expedite the litigation. The court will deny the motion as to this defense.

6. *Defense No. 6: Waiver, Estoppel or Laches*

The plaintiffs argue that the assertion of waiver, estoppel and laches are all deficient. There is no requirement that an affirmative defense must comply with the Twombly and Iqbal heightened pleading standards. Banks v. United States, No. 19-cv-85-SMY, 2020 WL 7342727, *1 (S.D. Ill. Dec. 14, 2020). These are proper affirmative defenses under Rule 8(c)(1) and the assertion of the defenses should come as no surprise based on the plaintiffs' prior litigation. Dkt. No. 30 at 11. The court will deny the motion as to these defenses.

11

### 7. *Defense No. 7: Qualified Immunity*

According to the plaintiffs, the defendants fail to clarify which defendants are cloaked in quasi-judicial immunity. The defendants point out that the Seventh Circuit dismissed previous litigation against Laliberte and others on qualified immunity grounds. Dkt. No. 30 at 12. The parties have briefed this defense in connection with the defendants' motion to dismiss. There is no basis to strike.

### 8. *Defense No. 8: Court Lacks Jurisdiction*

The plaintiffs argue that none of the defendants who answered can argue that the court lacks personal jurisdiction. The defendants respond that it was important to include this defense to clarify that they were not waiving any arguments on behalf of the non-answering defendants. Dkt. No. 30 at 13. The court agrees that only defendants as to whom the court arguably does not have personal jurisdiction may raise that as a defense. This is the only defense the court will strike.

## III. Plaintiffs' Motion for Extension of Time to Complete Service (Dkt. No. 25)

On the ninetieth day after filing the complaint, the plaintiffs filed a motion for extension of time to complete service on Laliberte and Ridgeway. Dkt. No. 25. At that point, seven of the nine defendants had been served. Counsel for the others refused to accept or waive service on behalf of Laliberte and Ridgeway because those two defendants had separated from the University. Dkt. No. 25 at 2. Laliberte now resides in New York and Ridgeway has left her job, left Milwaukee and married. Id. at 3. Three days after filing the

12

Case 2:20-cv-00824-PP    Filed 03/17/21    Page 12 of 15    Document 41

motion, the plaintiffs served Laliberte. Dkt. No. 29. The plaintiffs served Ridgeway on September 23, 2020. Dkt. No. 31.

Rule 4(m) of the Federal Rules of Civil Procedure governs service of process. The rule provides, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against the defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). "Good cause" is demonstrated by a showing of a valid and justifiable reason for the delay of service. Coleman v. Milwaukee Bd. of Sch. Directors, 290 F.3d 932, 934 (7th Cir. 2002). While the rule requires the court grant an extension of time to effect service upon a showing of good cause, it permits the court to grant such relief even absent such a showing. Burton v. Portfolio Recovery Assoc., LLC, No. 20-C-222, 2020 WL 4597123, *2 (E.D. Wis. Aug. 11, 2020).

Laliberte and Ridgeway have appeared for the limited purpose of opposing the motion. Laliberte points out that he was served ninety-three days after the plaintiffs filed their complaint. Dkt. No. 28 at 2. Ridgeway was served twenty days after Laliberte. Both defendants argue that the plaintiffs failed to show good cause. Id. at 3. They assert that the plaintiffs knew where to serve Laliberte and waited until August 20, 2020—eleven days before the deadline—to contact the local sheriff's office for assistance. Id. at 4. They argued that the plaintiffs also waited until the last minute to serve Ridgeway.

13

The plaintiffs acknowledge that "they did not do everything possible to secure the most rapid service," but insist they made reasonable efforts. Dkt. No. 32 at 1. The plaintiffs maintain that they have good cause because of a "software incompatibility issue" resulting in a delay in the issuance of the summons by the clerk. Id. at 3. It's not clear what that means, particularly where the plaintiffs admit they received the summons on June 5, 2020. The plaintiffs also admit that they adopted the strategy of serving a small number of defendants and waiting for counsel to appear with the expectation that counsel would waive or accept service for the rest. Id. They acknowledge they failed to consider the slowdown that affected the U.S. Postal Service in August of 2020 or counsel's illness for three days. Id. at 3-4. The plaintiffs argue that the delay was minimal and good cause exists for a delay of such short length.

The plaintiffs have provided an explanation for the delay and the delay was minimal. The court will exercise its discretion and grant the request for an extension, mindful that all things have been delayed due to the pandemic. The court notes that all defendants have joined in the pending motion to dismiss (while reserving the right to assert lack of personal jurisdiction and lack of proper service); the court will address their arguments by separate order.

### IV. Plaintiffs' Motion for Leave to File Corrected Reply Brief (Dkt. No. 37)

On October 7, 2020, the plaintiffs filed a motion for leave to file a corrected brief. Dkt. No. 37. A day after filing the motion to strike, the plaintiffs noted that their brief exceeded the page limitation in the local rules. Dkt. No. 37 at 1. The plaintiffs say they would have filed the motion seeking leave to file

14

the corrected brief sooner "but for plaintiff" (not identified but presumably counsel) having fallen ill and not working during that time. Id. The attached corrected brief uses 12-point Times New Roman instead of Constantia, "with reduced leading between paragraphs, adjusted kerning and removal of unnecessary paragraph breaks in order to comply with the local rule." The plaintiffs also corrected two spelling errors and inserted an omitted period. Id. No one opposed the motion to file the corrected reply brief. The court will grant the motion.

**IV. Conclusion**

The court **GRANTS IN PART** the plaintiffs' motion to strike defenses. Dkt. No. 19. The court **STRIKES** the defendants' affirmative defense asserting a lack of personal jurisdiction.

The court **DENIES** the remaining portions of the plaintiffs' motion to strike defenses. Dkt. No. 19.

The court **GRANTS** the plaintiffs' motion for extension of time to complete service on defendants Laliberte and Ridgeway. Dkt. No. 25.

The court **GRANTS** the plaintiffs' motion for leave to file corrected reply brief in support of striking defenses. Dkt. No. 37.

Dated in Milwaukee, Wisconsin this 17th day of March, 2021.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**